**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DELUNA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TANDEM DIABETES CARE, INC.,<br><br>Defendant. | Case No.  5:20-cv-727<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Deluna brings this action on behalf of himself and all others similarly situated against Defendant Tandem Diabetes Care, Inc. ("Tandem" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Tandem is a medical device manufacturer that specializes in the treatment of diabetes and insulin infusion therapy.  The company has an annual revenue of around $200 million.

2.      Between January 17, 2020 and January 20, 2020, Tandem was the subject of a data breach due to its negligent failure to properly safeguard the information of its customers.  The data breach exposed "customer names, contact information, information related to those customers' use of Tandem's products or services, clinical data regarding their diabetes therapy, and in a few limited instances, Social Security numbers" (collectively, the "personal identifying information" or "PII").[1]

3.      Despite experiencing this data breach in January 2020, Tandem waited two months to announce the data breach to consumers in March 2020.

4.      Plaintiff brings this class action on behalf of himself and all others similarly situated for actual and statutory damages, as well as punitive damages and equitable relief to fully redress the widespread harm Tandem's wrongful acts and omissions have unleashed.

## THE PARTIES

5.      Plaintiff Joseph Deluna is a citizen of California who resides in San Bernardino County, California.  Mr. Deluna is a customer of Tandem.  As part of

---

[1] SUBSTITUTE NOTICE, https://www.tandemdiabetes.com/support-update/substitute-notice (last accessed Apr. 8, 2020).

CLASS ACTION COMPLAINT                                                               1

being a Tandem customer, Mr. Deluna shared his personal identifying information with Tandem.  When giving his PII to Defendant, Mr. Deluna reasonably believed that his PII would be securely stored and protected against unauthorized access.  In or about March 2020, Mr. Deluna received a letter from Defendant informing him that his PII was accessed in the data breach.  Mr. Deluna now faces a substantial and imminent risk of identity theft and long-term adverse effects and embarrassment as a result of his PII being compromised.

6.      Defendant Tandem Diabetes Care, Inc. is a Delaware corporation with a principal place of business at 11075 Roselle Street, San Diego, California 92121. Tandem does substantial business in the State of California.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members of the Classes and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Classes member is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### I.      BACKGROUND ON DATA BREACHES

10.     A data breach is an incident in which sensitive, protected, or confidential data has potentially been viewed, stolen, or used by an individual unauthorized to do so.[2]

---

[2] Julian De Groot, *The History of Data Breaches*, DIGITAL GUARDIAN (Oct. 24, 2019), https://digitalguardian.com/blog/history-data-breaches (last accessed Apr. 8, 2020).

11.     A data breach can occur in numerous ways.  One way that a data breach can occur, and most relevant to this action, is through phishing.  Phishing occurs when a hacker "mimics a trusted, reputable entity in order to collect sensitive data," particularly banking information or highly personal details, and is conducted through pop-ups on internet browsers, emails with a link, or even phone calls where the hacker pretends to work for a reputable company.[3]

12.     In many cases, medical information is also accidentally exposed through lax office procedures and security.[4]

13.     Data breaches are becoming increasingly more common and harmful.  In 2014, 783 data breaches were reported, with at least 85.61 million total records exposed.  In 2019, 3,800 data breaches were reported, with at least 4.1 billion total records exposed.  The average cost of a data breach in the United States in 2019 was $8.19 million.[5]

14.     Consumers are harmed in a variety of ways by data breaches.  First, consumers are harmed financially.  According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[6]  However, other estimates have placed the costs even higher.  The 2013 Norton Report estimated that the average cost per victim of identity theft—a common result of data breaches—was $298 dollars.[7]  And in 2019, Javelin Strategy

---

[3] *Id.*

[4] Brian O'Connor, *Healthcare Data Breach: What to Know About Them and What to Do After One*, Experian, June 14, 2018, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Apr. 8, 2020).

[5] Chris Brook, *What's the Cost of a Data Breach in 2019*, DIGITAL GUARDIAN (July 30, 2019), *https*://digitalguardian.com/blog/whats-cost-data-breach-2019 (last accessed Apr. 8, 2020).

[6] *Id.*

[7] NORTON BY SYMANTEC, 2013 NORTON REPORT 8 (2013), https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf (last accessed Apr. 8, 2020).

---

CLASS ACTION COMPLAINT                                                    3

& Research compiled consumer complaints from the U.S. Federal Trade Commission ("FTC") and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[8]

15.     Identity theft is one of the most problematic harms resulting from a data breach.  With access to an individual's PII, criminals can do more than just empty a victim's bank account – they can also commit all manner of fraud, including obtaining a driver's license or official identification card in the victim's name but with the thief's picture.  In addition, identity thieves may obtain a job, rent a house, or receive medical services in the victim's name.  Identity thieves may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[9]

16.     Data breaches involving health information are likewise problematic. Divulging protected health information like medical conditions can lead to widespread embarrassment and a loss of reputation.[10]  Indeed, customers may face "physical, emotional, and dignitary harms" as a result of the disclosure of their medical information.[11]

---

[8] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last accessed Apr. 8, 2020) (citing the Javelin report).

[9] *See Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Feb. 24, 2020).

[10] *See generally* Charles Ornstein, Medical Privacy Often Causes the Most Harm, ProPublica, Dec. 10, 2015, https://www.propublica.org/article/small-scale-violations-of-medical-privacy-often-cause-the-most-harm (last accessed Apr. 8, 2020).

[11] *Code of Medical Ethics Opinion 3.3.3 – Breach of Security in Electronic Medical Records*, AMA, https://www.ama-assn.org/delivering-care/ethics/breach-security-electronic-medical-records (last accessed Apr. 8, 2020).

---

CLASS ACTION COMPLAINT                                                                              4

17.     Further, medical data is more valuable than other commonly available personal data.  "While a stolen credit card number might be sold for just a few cents, medical files can be worth as much as $1,000 each."[12]

18.     Consumers are also harmed by the time they spend rectifying the effects of a data breach.  A Presidential identity theft report from 2007 states that:

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in his credit reports and monitor his reports for future inaccuracies, close existing bank accounts, open new ones, and dispute charges with individual creditors.[13]

19.     Unfortunately, the effects of a data breach on consumers are not temporary.  In a report issued by the U.S. Government Accountability Office ("GAO"), the GAO found that "stolen data may be held for up to a year or more before being used to commit identity theft," and "fraudulent use of [stolen information] may continue for years" after the stolen information is posted on the Internet.[14]  This is particularly the case in data breaches involving Social Security numbers, where the risk of identity fraud remains elevated for several years to throughout a person's entire life."[15]  In fact, consumers suffer 33% of the harm from

---

[12] Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian, June 14, 2018, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Apr. 8, 2020).

[13] U.S. FEDERAL TRADE COMMISSION, THE PRESIDENT'S IDENTITY THEFT TASK FORCE, COMBATING IDENTITY THEFT: A STRATEGIC PLAN 11 (2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last accessed Apr. 8, 2020).

[14] *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (citing U.S. GOV'T ACCOUNTABILITY OFFICE, GAO–07–737, REPORT TO CONGRESSIONAL REQUESTERS: PERSONAL INFORMATION (2007)).

[15] Alicia Grzadkowska, *Consumers' Data Exposed for Years Following Breach Incidents*, INSURANCE BUSINESS MAG. Sept. 19, 2019,

---

CLASS ACTION COMPLAINT                                                                 5

1  a data breach after the first year.[16]  Thus, consumers can lose <u>years'</u> worth of time

2  dealing with a data breach.

3  **II.    THE TANDEM DATA BREACH**

4        20.    Between January 17, 2020 and January 20, 2020, Tandem was the

5  subject of a data breach.  The data breach was conducted through an email phishing

6  incident by an unauthorized user.  Through this email phishing incident, the

7  unauthorized user obtained access to some employees' email accounts.[17]

8        21.    The data breach exposed "customer names, contact information,

9  information related to those customers' use of Tandem's products or services,

10  clinical data regarding their diabetes therapy, and in a few limited instances, Social

11  Security numbers".[18]

12        22.    Despite the incident occurring in January, Tandem waited two months –

13  until March 2020 – to announce the data breach to consumers.  Upon information

14  and belief, as of the date of this Complaint, not all individuals have received their

15  notice letter of the data breach.

16        23.    The data breach affected individuals across the United States and in the

17  State of California.

18        24.    None of the individuals whose PII was accessed, authorized such access

19  or divulgence.

20        25.    Although Tandem is offering individuals whose Social Security

21  numbers were accessed through the data breach complimentary credit monitoring

22

23  https://www.insurancebusinessmag.com/us/news/cyber/consumers-data-exposed-for-
     years-following-breach-incidents-178390.aspx (last accessed Feb. 25, 2020).

24
25  [16] Larry Ponemon, *What's New in the 2019 Cost of a Data Breach Report*, SECURITY
     INTELLIGENCE, https://securityintelligence.com/posts/whats-new-in-the-2019-cost-of-
26  a-data-breach-report/ (last accessed Feb. 25, 2020).

27  [17] SUBSTITUTE NOTICE, https://www.tandemdiabetes.com/support-update/substitute-
     notice (last accessed Apr. 8, 2020).

28  [18] *Id*.

and identity protection services, these "remedies" are inadequate and too little too late.  First, much of the harm from a data breach can happen years after the data breach occurs.  In fact, identity thieves may simply calendar the date that the credit monitoring services are set to expire and act then, as "they don't mind hanging on until they get over that time period."[19]  And second, many credit reporting services offer free versions of their services.  To wit, Tandem's offer for complimentary membership is hollow.  Thus, the remedial action by Tandem is inadequate to rectify the harm caused to Plaintiff and others similarly situated by the data breach.

26.     Plaintiff brings this action on behalf of himself, the Class, and the Subclass for actual and statutory damages, as well as punitive damages for:  (i) negligence; (ii) negligence per se for violation of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45; and (iii) violation of the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*

## CLASS ACTION ALLEGATIONS

27.     Plaintiff seeks to represent a Class defined as all persons or business entities in the United States whose PII was compromised as a result of the data breach of Defendant (the "Class").  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

28.     Plaintiff also seeks to represent a subclass defined as all persons or business entities in the State of California whose PII was compromised as a result of the data breach of Defendant (the "Subclass").

29.     Collectively, the Class and the Subclass shall be referred to as the "Classes".

30.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

_____

[19] Grzadkowska, *supra* note 15.

1    31.    At this time, Plaintiff does not know the exact number of members of

2    the Classes.  However, given the nature of the claims and the size of Defendant's

3    business, Plaintiff believes that the members of the Classes are so numerous that

4    joinder of all members is impracticable.

5    32.    Common questions of law and fact exist as to all members of the

6    Classes.  The data breach was generally applicable to all members of the Classes and

7    arose from a common set of acts and omissions by Defendant without regard to the

8    nature or identity of individual members of the Classes, thereby making appropriate

9    relief with respect to the Classes as a whole.

10    33.    The questions of law and fact common to the Classes include:

11    (a)    Whether Defendant owed a duty to the members of the Classes

12    under federal or state law to protect the PII, properly train its

13    employees, officers, and other members of its staff to avoid

14    potential causes of data breaches, provide timely notice of the

15    unauthorized access, provide timely and accurate information as

16    to the extent of the compromised PII, and provide meaningful and

17    fair redress;

18    (b)    Whether Defendant breached such duty;

19    (c)    Whether Defendant's breach provided the means for the data

20    breach;

21    (d)    Whether Defendant's negligence provided the means for the data

22    breach;

23    (e)    Whether Defendant violated Plaintiff's and the Subclass's rights

24    under the CMIA;

25    (f)    The appropriate injunctive and related equitable relief for the

26    Classes; and

27    (g)    The appropriate class-wide measure of damages for the Classes.

28

CLASS ACTION COMPLAINT                                                                        8

34.     Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendant's wrongful conduct in that his PII has been exposed to criminal third parties without his authorization.

35.     Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

36.     Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

37.     Plaintiff is represented by counsel competent and experienced in the prosecution of consumer protection and tort litigation.

38.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

39.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense of numerous individual actions.  The benefits of proceeding as a Classes, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

40.     The prosecution of separate actions by individual members of the Classes is not feasible and would create a risk of inconsistent or varying adjudications.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I
### Negligence

41.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

42.    Plaintiff brings this claim on behalf of himself and all members of the proposed Classes against Defendant.

43.    Defendant owed Plaintiff and the members of the Classes a duty of care commensurate with the sensitive nature of the PII with which it was entrusted (particularly when aggregated and digitized).  Defendant created this duty by requiring Plaintiff and members of the Classes to provide their PII, storing the PII, using the PII for commercial gain, and making assurances that it would safeguard that information.

44.    In addition, Plaintiff and members of the Classes are current customers, or were otherwise in contractual privity with Defendant, giving rise to a duty owed by Defendant to Plaintiff and members of the Classes.

45.    Defendant's duty required it, among other things, to design and employ cybersecurity systems, anti-hacking technologies, intrusion detection and reporting systems, and employee training sufficient to protect the PII from unauthorized access and to promptly alert Defendant to any such access and enable it to determine the extent of any compromised PII.

46.    Had Defendant adequately designed, employed, and maintained appropriate technological and other systems, as well as properly trained its employees to avoid email phishing scams and other potential causes of data breaches, the PII would not have been compromised or, at a minimum, Defendant would have known of the unauthorized access sooner and would be able to accurately inform Plaintiff and the other members of the Classes of the extent to which their PII has been compromised.

CLASS ACTION COMPLAINT                                                             10

47.     Defendant breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to properly design its information storage systems to avoid defects or other errors, and failing to provide timely notice to affected consumers with accurate information so that those affected could begin minimizing the impact of the incident.

48.     Defendant breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to properly train its employees to avoid email phishing scams and other potential causes of data breaches, failing to minimize the PII that any intrusion could compromise (i.e., less aggregation and weeding out unnecessary and stale data), and failing to provide timely notice to affected consumers with accurate information so that those affected could begin minimizing the impact of the incident.

49.     Defendant's breach of its duties provided the means for third parties to access, obtain, and misuse the PII of Plaintiff and the members of the Classes without authorization.  It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized users.

50.     Defendant's breach of its duties has directly and proximately injured Plaintiff and members of the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (now or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

51.     Plaintiff and the members of the Classes are entitled to damages in an amount to be proven at trial, and to equitable relief, including injunctive relief.

## COUNT II
### Negligence *Per Se* For Violation of the Federal Trade Commission Act
### 15 U.S.C. § 45

52.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

53.     Plaintiff brings this claim on behalf of himself and all members of the proposed Classes against Defendant.

54.     Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce."  The FTC has held that the failure to employ reasonable measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5.

55.     The FTC has provided guidance on how businesses should protect against data breaches, including:  protect the personal customer information they acquire; properly dispose of personal information that is not necessary to maintain; encrypt information stored on computer networks; understand their network's vulnerabilities; and install vendor-approved updates to address those vulnerabilities. FTC guidance also recommends that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone may be trying to penetrate the system; and watch for large amounts of data being transmitted from the system.

56.     Plaintiff and members of the Classes are within the class of persons Section 5 of the FTCA was intended to protect.

57.     The harm that has occurred is the type of harm the FTCA was intended to guard against.  Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and members of the Classes.

---

CLASS ACTION COMPLAINT                                                        12

58.     Defendant owed a duty to Plaintiff and members of the Classes under the Section 5 of the FTCA.

59.     Defendant breached its duty under Section 5 of the FTCA by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to properly train its employees to avoid email phishing scams and other potential causes of data breaches, failing to minimize the PII that any intrusion could compromise (i.e., less aggregation and weeding out unnecessary and stale data), and failing to provide timely notice to affected consumers with accurate information so that those affected could begin minimizing the impact of the incident.

60.     Defendant's breach of its duties has directly and proximately injured Plaintiff and members of the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which their PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts their credit, reputation, and finances at risk, and taking reasonable steps (now or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of unauthorized and criminal access to their PII.

61.     Plaintiff and the members of the Classes are entitled to damages in an amount to be proven at trial, and to equitable relief, including injunctive relief.

## COUNT III
### Violation of the Confidentiality of Medical Information Act,
### Cal. Civ. Code §§ 56, *et seq.*

62.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

63.     Plaintiff brings this claim on behalf of himself and all members of the proposed Subclass against Defendant.

64.     Defendant is a "licensed health care professional," within the meaning of Cal. Civ. Code § 56.05(h), and maintained and continues to maintain "medical

1    information," within the meaning of Cal. Civ. Code § 56.05(j), of "patients" of the

2    Defendant, within the meaning of Cal. Civ. Code § 56.05(k).

3         65.    Plaintiff and the Subclass members are "patients" of Defendant within

4    the meaning of Cal. Civ. Code § 56.05(k) and are "endanger[ed]" within the meaning

5    of Cal. Civ. Code § 56.05(e) because Plaintiff and the Subclass members fear that

6    disclosure of their medical information could subject them to harassment or abuse.

7         66.    Furthermore, Plaintiff and the Subclass members, as patients of

8    Defendant, had their individually identifiable "medical information," within the

9    meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on

10   Defendant's computer network, and were patients in March 2020.

11        67.    By making Defendant's email account accessible to third parties,

12   Defendant negligently created, maintained, preserved, stored, and then exposed

13   Plaintiff and the Subclass members' "medical information," within the meaning of

14   Cal. Civ. Code § 56.05(j), including Plaintiff and the Subclass members' medical

15   history and mental or physical condition, or treatment.

16        68.    This information was "individually identifiable" within the meaning of

17   Cal. Civ. Code § 56.05(j) because it included information such the names, contact

18   information, and Social Security numbers of Plaintiff and Subclass members that

19   "allow the identification of the individual."

20        69.    Defendant allowed Plaintiff and the Subclass members' medical

21   information to become publicly available on the Internet by publishing it on an email

22   account which was accessed by unidentified unauthorized third parties.

23        70.    Defendant allowed to be published Plaintiff and the Subclass members'

24   medical information through one of Defendant's email accounts, without the prior

25   written authorization of Plaintiff and the Class, as required by Cal. Civ. Code §

26   56.10.

27        71.    Defendant's failure to obtain the written consent of Plaintiff and the

28   Subclass members before allowing to be published Plaintiff and the Subclass

CLASS ACTION COMPLAINT                                                          14

members' medical information that was being stored on an email account, accessible to anyone without the need for decryption or entry of a password, without the prior written authorization of Plaintiff and the Subclass members, constitutes a negligent release of Plaintiff and the Subclass members' confidential, individual identifiable "medical information" to an unauthorized person or persons in violation of Cal. Civ. Code § 56.101 of the CMIA.

72.     Furthermore, Defendant's publishing of Plaintiff and the Subclass members' medical information on the Internet, that was being stored on an email account, was not permissible without written authorization from the Plaintiff and the Subclass members under any exemption under Cal. Civ. Code § 56.l0(c).

73.     As a result of Defendant's above-described conduct, Plaintiff and the Subclass members have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by the CMIA.

74.     Because Civil Code § 56.101 allows for the remedies and penalties provided under Cal. Civ. Code § 56.36(b), Plaintiff and the Subclass members seek nominal damages of one thousand dollars ($1,000) for each violation under Cal. Civ. Code § 56.36(b)(1), and actual damages suffered, if any, pursuant to Cal. Civ. Code § 56.36(b)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     An Order certifying each of the proposed Classes and appointing Plaintiff and his Counsel to represent the Classes;

(b)     An Order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiff's and the Classes' PII;

(c)    An Order compelling Defendant to employ and maintain appropriate systems and policies to protect consumer PII and to promptly detect, and timely and accurately report, any unauthorized access to that data;

(d)    An award of compensatory, statutory, and punitive damages, in an amount to be determined;

(e)    An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law;

(f)    Interest on all amounts awarded, as allowed by law; and

(g)    Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Dated: April 8, 2020                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A**.

                                        By:  _____/s/ *L. Timothy Fisher*_____
                                                    L. Timothy Fisher

                                        L. Timothy Fisher (State Bar No. 191626)
                                        1990 North California Blvd., Suite 940
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile:  (925) 407-2700
                                        E-mail: ltfisher@bursor.com

                                        *Attorneys for Plaintiff*